

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4513
Re: Is the stock transfer tax levied
by Article XV, House Bill 8, Acts,
Regular Session, 47th Legislature
(Article 7047m, Vernon's Texas
Civil Statutes), applicable to
the original issue or the transfer
of shares of stock, certificates,
etc. of (1) The Federal Land Bank
of Houston, (2) The Federal Inter-
mediate Credit Bank of Houston,
(3) The Production Credit Corpora-
tion of Houston, (4) The Houston
Bank for Cooperatives, (5) Produc-
tion Credit Associations, (6) Na-
tional Farm Loan Association and
(7) Federal Savings and Loan Asso-
ciations.

Your letter of March 31, 1942, submits for our attention
and opinion the following inquiries, which we quote therefrom:

"The question has arisen in this department as to
whether the stock transfer tax levied by Article XV of
House Bill 8, Acts of the Regular Session of the Forty-
seventh Legislature, applies to stock issued by corp-
orations organized under the Farm Credit Administration
Laws, especially to such corporations as The Federal
Land Bank of Houston, the Federal Intermediate Credit
Bank of Houston, the Production Credit Corporation of
Houston, the Houston Bank for Cooperatives and produc-
tion credit associations and national farm loan associa-
tions which have their offices in various districts of
the state. In light of the above I shall thank you to
answer the following questions:

"Is the stock transfer tax levied by Article XV,
House Bill 8, Regular Session of the Forty-seventh Leg-
islature, applicable to shares, share accounts, certi-
ficates, or pass-books issued by such corporations?

"Under a similar law the Federal Savings and Loan
Associations are organized. Would the same rule govern
the shares issued by these organizations?

"It is the information of this department that these
corporations issue both Class A and Class B stock.

"I am enclosing a letter from Mr. Carl Runge, Dis-
trict General Counsel for The Federal Land Bank of Hous-
ton, that may be of some service to you in answering the
above questions. I will thank you to return this file to
this department with your reply."

The purpose and tenor of the attached letter to you from
Honorable Carl Runge, District General Counsel for the Farm Credit
Administration of Houston, as well as subsequent conversations with
you, indicate that the real question before this department is the
taxability of transfers of shares of certificates of stock of the
subject corporations and associations rather than the original issue
of stock by such corporations and associations. However, inasmuch
as the questions submitted by you specifically speak of the taxabil-
ity of shares "issued by such corporation," we think it not amiss,
in passing, and to clarify the situation, to refer you to our Opinion
No. O-3594, directed to you, and holding that the tax measure in
question does not apply to the original issue of stock by corpora-
tions, associations, etc. This would, of course, embrace the subject
concerns.

The determination of whether or not the transfer, from one
person to another, of outstanding shares of stock of the various
corporations and associations mentioned in your letter, is subject
to the tax in question, hinges squarely upon the incidence of the
tax; because if the burden thereof is fixed directly upon these corp-
orations or associations whose stock is sold or transferred, and such
corporations or associations are Federal agencies and instrumentali-
ties, then, under admitted principles of constitutional law, no tax
would or could accrue; per contra, if the charge of this tax rests
upon the seller or transferor of the stock or certificates, then the
question of constitutional immunity from state taxation is not pre-
sented and the tax may be lawfully collected.

To determine this issue generous references to the Stock
Transfer Tax Act become necessary. Section 1 of the Act levies the
following tax:

"There is hereby imposed and levied a tax as here-
inafter provided on all sales, agreements to sell, or
memoranda of sales, and all deliveries or transfers of
shares, or certificates of stock, or certificates for
rights to stock, or certificates of deposit represent-
ing an interest in or representing certificates made
taxable under this Section in any domestic or foreign
association, company, or corporation, or certificates
of interest in any business conducted by trustee or
trustees made after the effective date hereof, whether
made upon or shown by the books of the association,
company, corporation, or trustee, or by any assignment
in blank or by any delivery of any papers or agreement
or memorandum or other evidence of sale of transfer or
order for or agreement to buy, whether intermediate or
final, and whether investing the holder with the bene-
ficial interest in or legal title to such stock or other
certificate taxable hereunder, or with the possession
or use thereof for any purpose, or to secure the future
payment of money or the future transfer of any such
stock, or certificate, on each hundred dollars of face
value or fraction thereof, three (3) cents, except in
cases where the shares or certificates are issued with-
out designated monetary value, in which case the tax
shall be at the rate of three (3) cents for each and
every share.  It shall be the duty of the person or per-
sons making or effectuating the sale or transfer to pro-
cure, affix, and cancel the stamps and pay the tax pro-
vided by this Article."  (Emphasis ours)

Section 1 of the Act further provides the mode and manner
of payment of such tax:

" * * * The payment of such tax shall be donated
by an adhesive stamp or stamps affixed as follows:  In
the case of a sale or transfer, where the evidence of
the transaction is shown only by the books of the as-
sociation, company, corporation, or trustee, the stamp
shall be placed upon such books, and it shall be the
duty of the person making or effectuating such sale or
transfer to procure and furnish to the association, com-
pany, corporation, or trustee the requisite stamps, and
of such association, company, corporation, or trustee
to affix and cancel the same.  Where the transaction is
effected by the delivery or transfer of a certificate
the stamp shall be placed upon the surrendered certifi-
cate and canceled; and in cases of an agreement to sell,
or where the sale is effected by delivery of the certi-
ficate in blank, there shall be made and delivered by
the seller to the buyer, a bill or memorandum of such

sale, to which the stamp provided for by this Article shall be affixed and canceled, provided, however, that such bill or memorandum may be made in duplicate and the stamp provided for by this Article may be affixed to a duplicate of such bill or memorandum and canceled, and such duplicate of such bill or memorandum may be kept by the party making such sale in his possession, provided that he shall enter upon the original of such bill or memorandum a date and number showing that such bill or memorandum was made in duplicate and that the stamp was affixed to the duplicate thereof retained by the seller. Every such bill or memorandum of sale or agreement to sell shall show the date of the transaction which it evidences, the name of the seller, the stock, or other certificate, to which it relates, and the number of shares thereof. All such bills or memoranda of sale shall bear a number upon the face thereof and no more than one such bill or memorandum of sale made by the seller on any given day shall bear the same number. The aforesaid identification number of the bill or memorandum of sale shall in all cases be entered and recorded in a book of account." (Emphasis ours)

Even without the assistance of the conclusive authorities hereinafter cited and discussed, we believe the bare text of the statute above quoted impels to the conclusion that the incidence of the tax in question is upon the seller or transferor of shares or certificates of stock and is by no conceivable interpretation of the statute, upon the corporation or association whose stock is sold or transferred. It is quite true that other portions of this tax measure place some burden upon corporations or associations whose stock is bought and sold by the investing or speculating public, such as the keeping of proper records for inspection of the tax authorities, and affixing of tax stamps, etc.; but this burden is incidental to their right to do business in the state and is an enforcement feature only, which has been upheld in the cases hereinafter discussed as entirely constitutional. The duty of buying the stamps evidencing payment of this tax is placed squarely upon the "person or persons making or effectuating the sale or transfer." The tax here is not an ad valorem or other direct tax upon stock issued or held by the named corporations and associations, but rather is an indirect or excise tax upon the privilege of transferring such shares and lies against the person, firm or corporation exercising such privilege, to-wit: the seller or transferor of the stock. This controlling distinction, to our mind, makes the position of Mr. Runge untenable and his authorities inapposite, although with the general principle that Federal agencies or instrumentalities may not be taxed by a state, we, of course, do not differ.

Our analysis of the statute is fortified by the persuasive interpretation upon this question accorded the New York Stock Transfer Tax Act, from which the Texas Act is patterned. Opinion No. 220 by the Attorney General of New York in 1939, prior to the enactment of the instant measure, holds that transfers of the stock of a Production Credit Association, even though a Federal instrumentality, authorized by Federal law, are subject to tax. In such opinion it is said that "The imposition of such a tax upon an individual owner does not become a burden upon the Federal instrumentalities, nor does it in any way interfere with or impair any of the rights and duties of the Federal agencies."

The case of Graves et al vs. Phelps, (1939) 257 App. Div. 889, 12 N. Y. S. (2d) 76, holds it to be the duty of the person making or effectuating a sale or transfer of stock to affix or cancel the stamps.

The case of Wilie vs. Addams et al, Court of Appeals, July 11, 1935, 268 N. Y. 160, 197 N. E. 180, affirming Wylie vs. Adams, 278 N. Y. S. 100, holds that the failure to pay a stock transfer tax by the seller upon the sale of stock precludes an action to recover on a purchase money note.

More directly bearing upon the arguments advanced by the able counsel for the Farm Credit Administration, we point to decisions by the Supreme Court of the United States upholding state statutes designed to cause national banking corporations, being admitted Federal agencies, to collect and remit taxes levied upon the shareholders of said banks. First National Bank v. Kentucky, 9 Wall. 353, 19 L. Ed. 701; Citizens National Bank v. Kentucky, 217 U. S. 443, 54 L. Ed. 832, 30 S. Ct. 532; First National Bank v. Chehalias County, 166 U. S. 440, 41 L. Ed. 1069, 17 S. Ct. 629; Merchants & M. Nat. Bank v. Pennsylvania, 167 U. S. 461, 42 L. Ed. 236, 17 S. Ct. 829.

With reference to the contention that the instant tax measure places an unconstitutional tax or burden upon agencies or instrumentalities of the Federal Government, we think the case of Colorado National Bank vs. Bedford, 310 U. S. 41, 84 L. Ed. 1067, furnishes a complete answer. In upholding the constitutionality of a state law requiring national banking corporations to collect and remit to the state, a tax levied upon customers of the bank, based upon the value of safety deposit box services, the Supreme Court said:

"The person liable for the tax, primarily, cannot always be said to be the real taxpayer. The taxpayer is the person ultimately liable for the tax

itself. The funds which were received by the State
came from the assets of the user, not from those of the
federal instrumentality, the bank. The Colorado Su-
preme Court holds the user is the taxpayer. The deter-
mination of the state court as to the incidence of the
tax has great weight with us and, when it follows log-
ically the language of the Act, as here, is controlling.
As the user directly furnishes the funds for the tax,
not as an ultimate consumer with a transferred burden
but by | 12 of the Act is the responsible obligor, we
conclude the tax is upon him not upon the bank. The
Constitution or laws of the United States do not forbid
such a tax.

"The tax being a permissible tax on customers of
the bank, it is settled by our prior decisions that the
statutory provisions requiring collection and remission
of the taxes do not impose an unconstitutional burden
on a federal instrumentality. * * * "

Upon these considerations and authorities we accordingly
advise you that the seller or transferor of the shares or certifi-
cates of stock of the corporations and associations named in your
letter, is liable for the excise or privilege tax levied by the
Texas Stock Transfer Law, regardless of the status of such corpora-
tions or associations as Federal agencies or instrumentalities, a
question which we find unnecessary to here pass upon.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Pat M. Neff, Jr.
Assistant

PMN:ej

